1 | LOUIS P. DELL, ESQ. (SBN 164830)
LAW OFFICE OF LOUIS P. DELL
2 | 715 South Victory Blvd.
Burbank, CA 91502
3 | (818) 478-2822 (Office)
(818) 436-5966 (Fax)
4 | e-mail: ldell@louisdell.com

5

6 | Attorney for Plaintiff,
STEVEN BOSTON

7

8

9

10 | IN THE UNITED STATES DISTRICT COURT FOR THE

11 | CENTRAL DISTRICT OF CALIFORNIA, FIRST STREET COURTHOUSE

12 | STEVEN BOSTON,  )  CASE NO. 2:18-cv-03746-PSG-SS
13 |                 )
                    Plaintiffs,  )
14 |                 )  PLAINTIFF STEVEN BOSTON'S
        vs.         )  NOTICE OF MOTION AND
15 |                 )  MOTION FOR SUMMARY
     CLUBCORP USA, INC., )  JUDGMENT, OR IN THE
16 |                 )  ALTERNATIVE, PARTIAL
     UNITED MEDIATION )  SUMMARY JUDGMENT AGAINST
17 | SERVICES, INC., )  DEFENDANT UNITED MEDIATION
                    )  SERVICES, INC.;
18 | CLUBCORP BUNKER HILL )
     CLUB, INC.,    )  MEMORANDUM OF POINTS AND
19 |                 )  AUTHORITIES
     and DOES 1 to 10, inclusive, )
20 |                 )
              Defendants.  )  Date: June 24, 2019
21 | _____ )  Time: 1:30 p.m.
                                    Ctrm: 6A (6th Floor - First Street)
22
                                    Final Prtrl Conf.:  07/15/19
23                                  Trial Date:         07/30/19

24

25 | TO THE COURT AND TO ALL PARTIES OF RECORD:

26 | NOTICE IS HEREBY GIVEN that the plaintiff will move the Court for summary

27 | judgment, or in the alternative partial summary judgment against Defendant United

28

-1-

Plaintiff's Motion for Summary Judgment

Mediation Services, Inc. pursuant to Fed. R. Civ. P., Rule 56(c) as follows:

Plaintiffs seeks an order adjudicating the following claims of liability:

1. Defendant United Mediation Services, Inc. is liable for violation of the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq*.

2. Plaintiff Steven Boston is not liable for the first and second counterclaims alleging violations under Penal Code § 632 *et seq*. asserted in the Amended Answer to Plaintiff's Third Amended Complaint, Affirmative Defenses, Counterclaim, and Prayer for Relief

LOCAL RULE 7-3 COMPLIANCE

Counsel met and conferred on April 10, 2019. The parties were unable to resolve any disputes regarding the foregoing.

Dated: April 30, 2019                LAW OFFICE OF LOUIS P. DELL

*/s/ Louis P. Dell*
Louis P. Dell, Esq.
Attorney for Plaintiff,
STEVEN BOSTON

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

The lawsuit arises from abusive debt collection by Defendant United Mediation Services, Inc. The Fair Debt Collection Practices Act governs the actions of debt collectors and contains a variety of requirements and prohibitions. In this case, the defendant committed violations including attempting to collect inflated amounts, failing to warn of the right to verify the debt, and attempting to extort payment by threatening to sue the plaintiff on the debt in Texas.

The plaintiff further seeks summary judgment on the counterclaim under California Invasion of Privacy Act filed by Defendant United Mediation Services, Inc. The counterclaim seeks to hold the plaintiff liable for damages arising out of an audio recording plaintiff made of this defendant's attempt to extort payment from him. California law permits a party to record a conversation where the other party is suspected engaging in extortion.

In addition, the defendant is an unregistered foreign corporation who has forfeited any right to maintain a defense to this lawsuit or file its counterclaim.

This motion seeks summary judgment, or in the alternative, partial summary judgment as to plaintiffs claims under the Fair Debt Collection Practices Act, and, as to the defendant's counterclaim.

## FACTS

This lawsuit seeks damages, attorney fees, and costs against Defendant United Mediation Services, Inc. for violations of the Fair Debt Collection Practices Act (FDCPA) and California Rosenthal Act. [UDF 1]

At all times relevant, Plaintiff Steven Boston ("Boston") was, and is, an individual residing in the State of California, County of Los Angeles. [UDF 2] He is an

employee of the County of Los Angeles and his office is located near City Club Los Angeles which is a social and dinner club and several of his friends or co-workers are members. [UDF 3] He became interested in joining the club after his friends told him that he might enjoy the social and dining atmosphere. Club personnel also confirmed that they offered wine tasting, dinner parties, golfing, and the like. [UDF 4]

In early 2017, Boston toured City Club Los Angeles and was informed by the club representative that he could become a member by paying an initial fee of $750 and either $321/month for a "My Community" membership or $371 for a "My World" membership. The representative wrote the payment terms directly on the brochure and handed it to him. [UDF 5] He was initially hesitant to become a member because he has a son under the age of eighteen who lives with him and this made it difficult to afford the $750. The representative noticed his hesitance and that's when she verbally told him that the amount would be reduced to $500 and the March monthly dues would be waived. [UDF 6]

City Club Los Angeles ended up placing Boston in a "Home Club" membership for a $500 Initiation Fee and $321 monthly dues, with March monthly dues waived. [UDF 7] Boston paid the $500 Initiation Fee in full on February 28, 2017. [UDF 8] Although Boston had every intention of maintaining his membership status, he quickly realized that he could not afford the $321 monthly dues and paid none. [UDF 9] Boston's club membership was resigned effective August 22, 2017, with a final balance due of $1,623.47. [UDF 10]

On August 28, 2017 City Club Los Angeles assigned the account to Defendant United Mediation Services ("UMS"), Inc. to collect an amount owed of $1,623.47 which UMS accepted the assignment that same day. [UDF 16] UMS, a Texas corporation, is a debt collector, who advertises on its website that it is a "full service national debt collection agency," with "over 70 years of hands on debt collection experience." [UDF 17-19] At all times relevant, it has been doing business in the

County of Los Angeles. [UDF 17]

I. FDCPA VIOLATIONS

Plaintiff seeks summary adjudication against UMS for overcharging him $60 in inflated interest, tacking on various authorized charges, including a 30% debt collection fee in the amount of $487.04, attorney fees in the amount of $950, and $550.90 in additional interest, all unauthorized by the any agreement or bylaws.

UMS did not advise Boston, as it was required to do, that he had a right to request validation of the debt. In its zeal to collect, UMS used a grossly abusive collection tactic of attempting to extort payment by threatening to sue Boston in Texas when he resides in Los Angeles, California where City Club Los Angeles is located.

A. Purpose and Scope

The remedial purpose of the Fair Debt Collection Practices Act (FDCPA) is to safeguard consumers from abusive and deceptive debt collection practices by debt collectors. 15 U.S.C. § 1692(e)[1] Cases which have examined the FDCPA have found that the threshold requirement for application of the FDCPA is that prohibited practices are used in attempt to collect a debt. *See .e.g. Mabe v. G.C. Servs. Ltd. Partnership*, 32 F.3d 86, 87-88 (4th Cir. 1994)

Whether conduct violates any provision of the FDCPA requires an objective analysis that considers whether the "least sophisticated debtor" would likely be misled by a communication." *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1229 (9th Cir.1989); *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926 (9th Cir. 2007) [least sophisticated debtor analysis applies to all FDCPA provisions]

In the Ninth circuit, a debt collector's liability under § 1692e of the FDCPA is an issue of law. *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir.1997). The " least

---

[1] Unless specified otherwise, all statutory references are to Title 15 of the United States Code.

sophisticated debtor" standard is " lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Id.* (internal quotation marks omitted). The standard is "designed to protect consumers of below average sophistication or intelligence," or those who are " uninformed or naive," particularly when those individuals are targeted by debt collectors. *Duffy v. Landberg*, 215 F.3d 871, 874-75 (8th Cir. 2000) (internal quotation marks omitted); accord *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir.2007) (cautioning that " if the debt collector has targeted a particularly vulnerable group," "the benchmark for deciding whether the communication is deceptive would be the competence of the substantial bottom fraction of that group"). At the same time, the standard " preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir.2008) (internal quotation marks omitted). The FDCPA does not subject debt collectors to liability for " bizarre," " idiosyncratic," or " peculiar" misinterpretations. See *id.; Strand v. Diversified Collection Serv. Inc.*, 380 F.3d 316, 318 (8th Cir.2004).

Below, each of the FDCPA violations are analyzed in connection with each of the provisions violated within the lens of the least sophisticated debtor standard.

B.  $1,623.47 Inflated Interest Charges

Although City Club Los Angeles, on or about August 28, 2017, advised UMS that the final balance due was $1,623.47, that same day, UMS sent a debt collection letter to Plaintiff seeking to collect $2,110.51. [UDF 10, 20] The increase in the debt occurred because UMS tacked on a 30% debt collection fee (1.3*$1,623.47 =$2,110.51). [UDF 21] A little more than two months later, on or about October 31, 2017, UMS sent another debt collection letter to Plaintiff seeking to collect $2,110.51. [UDF 28] As explained in the next paragraphs, *both $1,623.47 and $2,110.51. were wrong*.

The Bylaws of City Club Los Angeles specify that the Club will assess a late charge of the lesser of (i) ten and 00/100 dollars, or (ii) ten percent (10%) of the past due balance. [UDF 11] Contrary to the Bylaws, City Club Los Angeles generated monthly statements showing four monthly late charges of $25 dollars for a total of $100 in late charges. [UDF 12] City Club Los Angeles statements could show at most four monthly late charges of $10 dollars for a total of $40 in late charges. [UDF 13] This inflated interest charges resulted in City Club Los Angeles overcharging Boston $60. [UDF 14] Instead of a final bill of $1,623.47, it should have been $1,563.47 (taking into account the $60 overcharge). [UDF 15]

The August 28 and October 31, 2017 debt collection letters, by attempting to collect inflated $25/month late charges and the 30% debt collection fee of $2,110.51 violated § 1692e by using false, deceptive or misleading representations or means in connection with the collection of a debt, including § 1692e(2) (falsely representing the character, amount, or legal status of any debt); § 1692e(10) by the use of any false representation or deceptive means to collect). The letter also violated § 1692f by the use of any unfair or unconscionable means to collect or attempt to collect any debt.

C. <u>Failure to Advise of Right to Validate Debt</u>

A debt collector is required, within five days after its initial communication with a consumer in connection with the collection of any debt, to send the consumer a written notice containing, (1) the amount of the debt; (2) the name of the original creditor; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; the date of transfer from the original creditor to the third party debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be

mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. (§ 1692g(a))

In this case, the August 28 collection letter was UMS' initial communication with Boston. [UDF 23] It failed to warn that "within thirty days after *receipt*" the Plaintiff could dispute "the validity of the debt, or any portion thereof." (Instead, it stated that a dispute must be made within thirty days from the *date of the letter*.) [UDF 24] It also failed to state that if any portion was disputed by Plaintiff then the debt collector would provide verification of the debt. [UDF 25] It further failed to state that if Plaintiff disputed the debt that the debt collector would provide the consumer with the name and address of the original creditor, if different from the current creditor. [UDF 26] Within five days after the August 28 letter, Defendant UMS failed to notify Boston, in the manner required by 15 U.S.C. § 1692g, that he could dispute the debt. [UDF 27]

### C. Unauthorized Collection Fees

Each of the August 28 and October 31, 2017 letters tacked on a 30% debt collection fee (1.3*$1,623.47 =$2,110.51). [UDF 20-21, 28] This unauthorized fee amounts to $487.04. City Club Los Angeles Bylaws do not impose any debt collection fee, much less a 30% fee. [UDF 22]

Defendant UMS, by attempting to collect $487.04 in collection fees violated § 1692e by using false, deceptive or misleading representations or means in connection with the collection of a debt, including § 1692e(2) (falsely representing the character, amount, or legal status of any debt); § 1692e(10) by the use of any false representation or deceptive means to collect). The letter also violated § 1692f by the use of any unfair or unconscionable means to collect or attempt to collect any debt.

### D. Unauthorized Attorney Fees, Add'l Interest, Extortion

Between August 28, 2017 - April 30, 2018, UMS telephoned Boston approximately forty-five times and left approximately twelve voice mails. [UDF 29] Within these phone calls UMS spoke over the telephone to Boston approximately four times. [UDF 30] Each time they spoke to Boston they advised that the conversation was being recorded. [UDF 31] Several of UMS' voice mails requested that Boston contact them to discuss repayment of the debt. [UDF 32] In a previous telephone conversation UMS had threatened to sue Boston in Texas. Therefore, on September 25, 2017, upon returning another call UMS had made, Boston recorded the conversation. [UDF 33]

On September 25, 2017, Boston returned UMS' call ("Call"), whereupon UMS implied that a collections lawsuit had been, or would be, filed and that they were having him served at work. [UDF 34] During the Call, UMS made several threats, including that the lawsuit would be heard in Dallas, Texas, and that Boston would have ten days to answer to the court in writing. [UDF 35]; that the contract signed by Boston provided that venue is in Dallas, Texas. [UDF 36]; that the answer must to state why payment was not made. [UDF 37] that if Boston failed to pay within ten days after the judgment, they would garnish his wages. [UDF 38] that the court would be asked to give Boston ten days to pay the debt ($2,110.51), plus 45% in attorney fees ($950) for a total of $3,060.51. [UDF 39] In addition, he would need to pay an additional 18-percent interest on the debt and attorney fees ($550.90). [*Id.*] None of these fees or charges were authorized by City Club Los Angeles Bylaws. [UDF 41-42] which were blatant violations of the FDCPA as described below.

Things took a criminal turn when defendant UMS decided to extort payment on the debt.[2] After threatening to sue in Texas when City Club Los Angeles is located in

---

[2] Every person who attempts, by means of any threat, to extort property or other consideration from another is guilty of attempted extortion. (Cal. Pen. Code § 524) Extortion is the obtaining of property or other consideration from another, with his or her consent, induced by a wrongful use of force or fear, or under color of official right. (Cal. Pen. Code 518(a))

Los Angeles, California and Boston resides in Los Angeles, UMS said that in order to put a hold on the Texas lawsuit they needed Boston's bank account information so they could withdraw the funds electronically. [UDF 40] The FDCPA, § 1692i(a)(2), prohibits suing on the debt outside of the venue where contract was signed or consumer resides.

Defendant UMS, by attempting over the phone to collect 45% in attorney fees, 18% interest, and by threatening to sue in Texas violated § 1692e by using false, deceptive or misleading representations or means in connection with the collection of a debt, including § 1692e(2) (falsely representing the character, amount, or legal status of any debt); § 1692e(5) (by threatening to take any action that cannot legally be taken or is not intended to be taken); § 1692e(10) (the use of any false representation or deceptive means to collect). The statements by UMS also violated § 1692f by the use of any unfair or unconscionable means to collect or attempt to collect any debt.

### E. Unauthorized Debt California Debt Collection

From January 1, 2017 to present, UMS was not registered with the California Secretary of State to transact business. [UDF 43] By sending two letters to Boston, and making numerous telephone calls to in an attempt to collect a debt, UMS was transacting business within California. [UDF 44]

Defendant UMS' failure to register to transact business within California forfeits all "corporate powers, rights and privileges" in California, including but not limited to, the right to maintain a lawsuit in the state, and the power to enter into valid contracts with other persons or entities. (Cal. Corp. Code §§ 2105, 2203; Cal. Rev. and Tax. Code § 23304.1; *Neogard Corp. v. Malott & Peterson-Grundy*, 106 Cal.App.3d 213, 219-220; see also, *Le Vecke v. Griesedieck W. Brewery Co.*, 233 F.2d 772, 775 (9th Cir.1956) [applying Cal. Corp Code §§ 2105, 2203 to lawsuits in

federal courts regarding California disputes])³

Defendant UMS, by accepting debt collection assignments from City Club Los Angeles, and by its numerous debt collection letters and telephone calls was transacting business within California in this case without first registering with the California Secretary of State. These actions violated § 1692e by using false, deceptive or misleading representations or means in connection with the collection of a debt, including § 1692e(2) (falsely representing the character, amount, or legal status of any debt); § 1692e(5) (by threatening to take any action that cannot legally be taken or is not intended to be taken); § 1692e(10) (the use of any false representation or deceptive means to collect). UMS also violated § 1692f by the use of any unfair or unconscionable means to collect or attempt to collect any debt.

### F. "Catchall" Violations

Several provisions are routinely referred to as "catchall" violations of the FDCPA. These provisions general bar the use of unfair, deceptive, and abusive debt collection. See, e.g., § 1692e(10) (the use of any false representation or deceptive means to collect), § 1692f (the use of any unfair or unconscionable means to collect or attempt to collect any debt); § 1692d (engaging in conduct the natural consequences of which is to harass, oppress, or abuse, any person in connection with collection of a debt)

The debt collection letters which sought more than was owed, the numerous phone calls, voice mails, and phone conversations where UMS extortive threat to sue Boston in Texas. Taken together, these acts violate each of the above FDCPA provisions.

## II. UMS COUNTERCLAIMS FAIL AS A MATTER OF FACT AND LAW

### A. Unconsented Recording of Extortion Attempt is Permitted

---

³ A foreign corporation is prohibited from transacting intrastate business in California without first obtaining a certificate of qualification from the Secretary of State. (Corp. Code, § 2105, subd. (a).) "A foreign corporation ... which transacts intrastate business without complying with section 2105 shall not maintain any action or proceeding upon any intrastate business so transacted in any court in this state, ..." (Corp. Code, § 2203, subd. (c).)

The counterclaim of Defendant UMS seeks damages, attorney fees, and costs against Plaintiff Steven Boston for violations of the California Invasion of Privacy Act (Cal. Pen. Code §§ 632, 632.7). The counterclaim alleges that Boston violated these provisions by recording a phone call with one of UMS's employees without the employee's consent. (See Counterclaim ¶¶ 17–24 [doc 51]). A key exception to the two-party consent rule is that one party to a confidential communication may still record the confidential communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of the crime of extortion. (Pen. Code § 633.5)

During the September 25, 2017, telephone call between UMS and Boston, UMS attempted to unlawfully injure Boston by threatening to sue him in Dallas, Texas, unless he paid the debt or provided his banking information so they could withdraw the funds electronically. [UDF 47] Boston never signed a contract with City Club Los Angeles in Dallas, Texas and he was residing in Los Angeles on September 25, 2017. [UDF 46] When making the threat, UMS intended to use that fear to obtain Boston's consent pay money to UMS towards the debt. [UDF 48]

Every person who *attempts*, by means of any threat, to extort property or other consideration from another is guilty of attempted extortion. (Pen. Code § 524) Extortion is the threat to unlawfully injure the property of another, with his or her consent, induced by a wrongful use of force or fear. (Pen. Code § 518(a); *People v. Hesslink*, 167 Cal. App.3d 781, 789 (1985)) "Unlawful injury" means "any threat to injure property of the person threatened," by "unlawful" means, "irrespective of whether or not the purpose with which the threat is made is to obtain money to which the person threatening is not entitled." *People v. Eugene Schmitz*, 7 Cal.App. 33 (1908)

The unlawful threat arises in light of the clear proscription in FDCPA which bars a debt collector from threatening to sue a person in the court venue outside of his

residence or where the contract was made. (15 U.S.C. § 1692e(5) (threat to take any action that cannot legally be taken or is not intended to be taken); § 1692i(a)(2) (venue is where contract signed or consumer resides). UMS, by threatening to sue Boston in thousands of miles away from his Los Angeles residence unless he paid the debt or provided his bank information, was a threat to unlawfully injure Boston's property.

Given these indisputable facts, as a matter of law, Boston cannot be liable to UMS for violating Cal. Pen. Code §§ 632, 632.7.

B.  <u>UMS Lacks Standing to Sue on California Counter-Claims</u>

Plaintiff's reply to the counter claim alleges Affirmative defense No. 3. UMS lacks standing to sue on behalf of itself and others, including but not limited to, its employee(s). [UDF 49]

A counter-defendant who seeks to challenge a counter-plaintiff's standing under Cal. Corp. Code §§ 2105 and 2203 may allege a lack of standing. The counter-defendant, as moving party, bears the burden to prove that: 1) the action arose out of counter-plaintiff's transaction of intrastate business; and 2) the action was commenced prior to counter-plaintiff qualifying to transact intrastate business. See *LeBlanc Nutritions, Inc. v. Advanced Nutra LLC*, CIV. S-05-0581-FCD-JFM, 2005 WL 1398538 (E.D.Cal. June 14, 2005)

UMS' failure to register to transact business within California forfeits all "corporate powers, rights and privileges" in California, including but not limited to, the right to maintain a lawsuit in the state, and the power to enter into valid contracts with other persons or entities. (Cal. Corp. Code §§ 2105, 2203; Cal. Rev. and Tax. Code § 23304.1; *Neogard Corp. v. Malott & Peterson-Grundy*, 106 Cal.App.3d 213, 219-220.) Any foreign corporation who fails to register and then transacts intrastate business without complying therewith is guilty of a misdemeanor. (Corp. Code § 2258).

UMS advertises on its website that it is a "full service national debt collection agency," with "over 70 years of hands on debt collection experience." [UDF 18] UMS transacted business in California with City Club Los Angeles by accepting an assignment to collect a debt. UMS further transacted business in California with his debt collection letters, phone calls, and extortive threat to Boston, a resident of Los Angeles. In fact, Defendant UMS has been transacting debt collection activities within California from at least 2012 through 2017. [UDF 50]

Based thereon, UMS lacks standing to maintain its counterclaim within the State of California, including federal district courts located therein, as to California claims.

## CONCLUSION

It is requested that this court grant Plaintiff Steven Boston's motion for summary judgment, or in the alternative, partial summary judgment.

Dated: April 30, 2019                LAW OFFICE OF LOUIS P. DELL

/s/ Louis P. Dell
Louis P. Dell, Esq.
Attorney for Plaintiff,
STEVEN BOSTON